CAROLINE M. WALDO *et al.*

*v.*

COLUMBUS R. CUMMINGS *et al.*

45   421
24a  643

45   421
145  312

45   421
147  613

45   421
152  274

45   421
66a   38

45   421
168  284

45   421
171  233

45   421
78a  444

45   421
184  275

45   421
190  3241

45   421
111a 5185

1. ESTATES — *for life — taxes accruing upon — must be paid by the owner.* The devisee of an estate for life is legally bound to pay the taxes accruing thereon, unless such liability is expressly removed by the terms of the instrument creating the estate.

2. SAME — *what language used in a will — not deemed sufficient to excuse payment.* Where a testator devised one-third of all his estate to A for life, "to be used and occupied by her, with the rents, issues and profits thereof," and the remainder to B, in trust for his children, with a proviso, that, if the children should permit any portion of the estate to be sold for taxes, and it should not be redeemed, they should forfeit their title to the unredeemed portion, — *held,* that this in no wise releases the devisee of the life estate from her legal liability to pay the taxes accruing upon her estate.

3. PERPETUITY — *definition of.* A perpetuity, as defined by Bouvier, and which definition has the approval of this court, is "any limitation tending to take the subject of it out of commerce for a longer period than a life, or lives, in being, and twenty-one years beyond, and, in case of a posthumous child, a few months more, allowing for the term of gestation.

4. WILLS — *chattels may be subjected by — to same modifications of ownership as realty.* A limitation as to chattels in remainder, after a bequest for life, is good by way of executory devise, provided, the power of alienation is not suspended beyond the term of a life or lives in being at the testator's death, and twenty-one years and the period of gestation thereafter.

5. SAME — *construction of a particular will.* Where, by the terms of a will, the testator required the division and payment of a certain portion of his estate, by his executor to his two children, when the younger should attain the age of twenty-one years, to be held by them during life, and in the event of the death of either, before succeeding to his share of the property, without

legal heirs, his portion to go to the survivor on arriving at majority; and a condition was annexed, that neither should have the power to incumber the fund, nor should it be subject to the payment of their debts, and that the party making any effort to incumber or sell the same should forfeit his share, and that, in event of their death, or a forfeiture by them, if they have lawful issue, or descendants of such issue, then the estate to vest in them, and if neither have such issue, then the property to vest absolutely in certain other persons named in the will, — *held,* that a life estate was thereby created in the legatees, which, when paid to them, would become a vested life estate, and not a contingency, or mere expectancy; and that no objection could be urged to the forfeiture provided for, nor to the limitation over, in event thereof.

6. TESTATOR — *how may dispose of his property.* Every testator has the right to dispose of his property in such manner as he may think proper, pro-. vided, in so doing, he creates no perpetuity.

7. ESTATES — *legatee entitled to accumulations — whether provided for or not.* And where in such case one of the legatees died, the survivor is not only entitled to the estate of the deceased, but also to the accumulations upon such estate, and this, had the will made no mention concerning such accumulations.

8. WILLS — *concerning powers of trustees under — can exercise only those expressly granted.* Where a person, as trustee under a will, receives property, with direction to pay it over to certain persons named therein at a specified time, to be held by such persons during life, he has no power to impose any terms or conditions upon such legatees, for the preservation of the future estate, which is not expressly given to him by the instrument. The will is the sole measure of his duties.

9. ESTATES — *security for preservation of a future estate — when power not given to a trustee to require — how applied for — and by whom.* In such case, security for the preservation of the future estate can be had, upon a proper application made to the court by the remainderman, and proof of its necessity. But persons not interested in the next expectant estate cannot interfere.

10. LEGACY — *of payment of to a person not entitled to receive.* Where a trustee under a will receives property to be paid over by him to two persons named as legatees therein, at a certain time, and, by the terms of the will, it was provided, that, if either of the legatees died before his portion of the estate became vested in him, without lawful issue, such portion should go to his survivor; and one of such legatees died, and without issue, — *held,* that the payment of the deceased's portion of the estate over to his administrator, in no wise affected the rights of such survivor.

11. WILLS — *testator has power to exempt bequests from liability for debts of legatees.* Where a testator bequeathed a portion of his estate to his children, for life, and declared that such bequest should not in any manner become liable for their debts, — *held,* that such disposition of his property was lawful, and that it could not be made liable for debts contracted by the legatees; that the will, having been recorded, was notice to the world of such exemption.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. EDWARD Y. RICE, Judge, presiding.

This was a bill in chancery originally filed in the Circuit Court of Tazewell county, by the plaintiffs in error, Caroline M. Waldo and Josiah C. Waldo, against the defendants in error, Sarah C. Cummings and Columbus R. Cummings, for a construction of the will of one David Mark.

The questions arising in this case are fully presented in the opinion.

Messrs. ROBERTS & GREEN, for the plaintiffs in error.

Messrs. COHRS & IRELAND, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court :

This case involves the true construction of a portion of the last will and testament of David Mark, deceased.   He devised to his wife one-third of his real estate, which was large, valuable and productive, to hold during her natural life, and to receive and to use the rents, issues and profits; also one-third of a large personal estate, to hold absolutely and in her own right.   He also made provision for the maintenance and education of his children until they arrived at the age of twenty-one. He then devised all of the rest and residue of his estate, both real and personal, to James Roberts and William S. Rankin, who were appointed his executors, in trust for the uses and purposes thereinafter expressed.   And they were directed to convert all his personal estate, not appropriated to his widow and to support and educate his children, into money, and to be kept at interest and well secured.  .

He directs, that, when the younger of his two children, Sarah C. and William W. Mark, shall arrive at the age of twenty-one years, his executors shall pay to them, each one-half of all his personal estate of which he died possessed or entitled to, and that may accumulate during that time (except the other bequests), which he declares shall be held, used and

enjoyed by them during the term of their natural lives. And he directed, that, in case either one of them should die before arriving at the age of twenty-one, without lawful children, then the executors were required to pay the share of the deceased child to the survivor upon arriving at majority, or, if already of that age, then to make immediate payment; to be used and enjoyed by the survivor only for life. He declares that neither they nor the husband of Sarah C. shall sell, assign, transfer or incumber the property; and, if they shall, or shall attempt to do so, by process or order of any court of law or equity, or otherwise, or to pass the same in bankruptcy, the interest of the party doing so or suffering the same shall become forfeited and pass to the other legatee.

That, on the death of either of his two children, or their forfeiting their shares, the portion of that legatee shall vest in and pass to their lawful children, respectively, or to their decendants, the children of a deceased child taking the share of their parents. And in case either of his two children should die without issue, then to vest in the survivor, and so in case of a forfeiture by either. And in case both should incur the forfeiture provided for, then the property to vest in the children of the legatee last incurring the forfeiture. And if both should die or incur the forfeiture, and should at the time have no children or descendants of children, then the estate is directed to vest in collateral relations of the testator, who are specified in the will. He also provides, that, if his legatees shall suffer any portion of his real estate to be sold for taxes and not redeemed, they shall forfeit that portion. This seems to be a substantial statement of the portions of the will involved in this controversy.

It is insisted, that Mrs. Cummings is bound to pay the taxes on the third of the lands allotted to Mrs. Waldo under the provisions of the will. That, as the will declares that Mrs. Waldo shall hold the same, and receive the rents, issues and profits; and as the testator declared that, if his children should permit such property to be sold for taxes, and it should not be redeemed, they should forfeit their title to the portion thus unredeemed, — she was relieved from the burden

of paying such taxes. In the case of *Prettyman* v. *Walston*, 34 Ill. 175, this court held, that the owner of the life estate was legally bound to keep down the taxes accruing upon the property; that was a burden incident to its present use and enjoyment. Nor is this rule controverted by plaintiffs in error. But it is urged, that the import of the language of the will is such that the intention of the testator to impose the burden on the remainderman is manifest.

It would seem to be apparent, that no such intention is expressed in that portion of the will which confers title on Mrs. Waldo. The clause simply devises to her one-third of all of testator's real estate, of which he should die siezed, " to be used and occupied by her, with the rents, issues and profits thereof, for and during the term of her natural life." No ingenuity can so construe this language as to change the legal liability of the tenant for life to pay the accruing taxes; and, to have that effect, such an intention must appear from the will.

It is, however, urged, that the lands are charged, in the hands of the remaindermen, with the burden, by the terms of the devise to them. It is insisted, that, when the testator declared, in the will, that, if they should suffer the lands, or any portion of them, to be sold for taxes, and they were not redeemed, the devisees should forfeit the title to the portion thus sold, he intended to charge them with the payment of these taxes. This provision of the will is inserted with the others which were designed to prevent the alienation of any portion of the real estate during the lives of his children. To prevent this, he has manifested great solicitude, as shown by the care with which he has provided against almost every contingency. And from the import of the language, as well as from its connection with other prohibitions from selling or disposing of the property, we are satisfied that it was inserted as one of the means of preserving the property in the hands of those with whom he has placed it, and to prevent it from being perverted to other uses than those which he had declared. It was, no doubt, designed to make the devisees in remainder active and

vigilant in their care of the property, and watchful to see that the taxes were paid, or, at least, if they were not, that tax titles should not be acquired upon the land. But he left it so that, if either the widow or the other devisees should fail in the discharge of the duty, the other devisees could pay them, or redeem the property from the sale, and look to the delinquent party to be reimbursed such outlay. This seems to be the scope of this provision, and we should do violence to the language if we should give it a different construction.

The next question presented is, whether this devise of the testator's property to his two children has created such a perpetuity as renders the devise inoperative and void. Has he created limitations so remote in their character as requires it to be disregarded, and to require the personal estate to be distributed under our statute of wills? If the will has attempted to create such a perpetuity as the law has prohibited, then, on the death of William W. Mark, under our statute, the mother, as the sole surviving parent, would be entitled to two-thirds of his share and Mrs. Cummings to the remaining third. If such is the character of this devise, then the parties took their shares absolutely and without limitation, and the share which William inherited would descend to his mother and sister in the same manner. But, if the bequest, with its limitations, is legal and binding, the whole of the property set apart to William on his death vested in and became that of his sister, subject to all of the limitations and conditions of the bequest.

A perpetuity is defined to be a limitation, taking the subject thereof out of commerce for a longer period of time than a life or lives in being and twenty-one years beyond; and, in case of a posthumous child, a few months more, allowing for the time of gestation. Bouvier's Law Dictionary. Gilbert, in his treatise on uses, defines it to be such a limitation of property as renders it inalienable beyond the period allowed by law. Gilbt. Uses, by Sugd. 260, and note. Lewis, in his treatise on perpetuities, defines it to be " a future limitation, whether executory or by way of remainder, and of either real or personal property, which is not to vest until after the expi-

ration of, or will not necessarily vest within, the period fixed and prescribed by law for the creation of future estates and interests, and which is not destructible by the persons for the time being entitled to the property, subject to future limitation, except with the concurrence of the individual interested under that limitation." Lewis' Perpt. 164. And an examination of the authorities will verify the correctness of the definition as well as the period of limitation specified by Bouvier. And, inasmuch as our general assembly has made no change in the law on this subject, we must look to, and be governed by, the common law. In the case of *Rhoads, Executor*, v. *Rhoads*, 43 Ill. 239, we adopted and acted upon this rule.

Are the limitations contained in this will repugnant to, and violative of, this rule? We have already seen that the will limits a life estate in the property, both real and personal (except one-third to the widow), to the two children of the testator. It is not questioned in this proceeding that the devise of the real estate for the lives of the first takers is permitted by the law. The question presented is, whether personal property may be thus limited, and upon this the contest principally arises.

The rule is correctly stated by Chancellor Kent (vol. 2, p. 352) in his commentaries, that chattels may be limited over by way of remainder, after a life interest is created, though not after a gift of the absolute property. He says the law was very early settled, that chattels real might be limited by will. And in support of the doctrine, he refers to *Manning's case*, 8 Coke, 95, and *Lampet's case*, 10 id. 46, and they fully sustain the rule. At common law, for a time, a distinction was taken between the gift of property, or the gift of the use of chattels for life, it being held, that in the former case a remainder over could not be created, while it might in the latter. But in time it came to be held, that there was nothing in the distinction, and that a gift of a chattel for life was a gift of the use only, and the remainder over was good as an executory devise. The same author lays down the rule, that this limitation over in remainder is good as to every spe-

cies of chattels; and there is no difference in that respect between money and other chattel interests. Ib. He seems to have stated the rule correctly, and is fully sustained by authority. *Moffatt* v. *Strong,* 10 Johns. 12; 2 Redfield on Wills, 654. It was to limit and control this character of devises with remainders over that the rule prohibiting perpetuities was adopted, which requires that the absolute ownership in property must vest in some one within the period of a life or lives in being and twenty-one years and a fraction thereafter.

Where the common law could not support the devise as a remainder, the limitation was, out of favor to wills, sustained as an executory devise. These limitations are not held to be mere possibilities, but are regarded as substantial interests or estates, and are placed under such restraints only, as have been deemed necessary to prevent the mischiefs growing out of perpetuities, or the creation of inalienable estates. 4 Kent, 263; Jarman on Wills, 667; 2 Redfield on Wills, 654. These authorities leave no doubt that chattels may be devised for a life or lives in being, and twenty-one years afterward, and in some cases nine months longer, provided, at the end of that time, the property is required to vest absolutely in some person then in being, capable of disposing of the title to the same.

Is the devise in this case in conformity to the rule? The testator required the division and payment of the property not otherwise bequeathed, by his executors, to his two children, when the younger should attain twenty-one years, such personal estate to be held, used and enjoyed by them during the term of their natural lives. And in the event of the death of either before arriving at the age of twenty-one, without lawful heirs, the executors were required to pay the share of such deceased child to the survivor, if of age, or, if not, on arriving at majority. There is a condition annexed, that neither they, nor the husband of Sarah C., should have power to sell or incumber the fund; or that it should be subject to sale on legal process for their debts. And it is provided, that, if an effort is made to so sell or incumber it, the party attempting to do so shall forfeit his or her share, and that it shall pass to

the next person in remainder. This only creates a life estate in persons then in being, which vested and came into possession at the time designated by the will. When paid over to the legatees, it became a vested life estate in possession, and not a contingency or mere expectancy. When the youngest legatee arrived at age the title vested in them, liable, it is true, to be defeated before both lives were expended.

Such a provision for a forfeiture in no wise militates against the rule. Instead of an extension of the period, it provides that on the happening of the contingency the property shall vest absolutely before the first takers have died. Instead of lengthening, it may shorten the period when the limitation shall cease. This then is not violative of the rule; nor is there any objection perceived to the limitation over, on a forfeiture by either of the legatees. If the forfeiture occurs, the share thus lost vests in the other legatee for life, but that would in no wise lengthen the period of limitation. The law gave the testator the power to limit this property by remainders and cross remainders during the continuance of the life or lives of persons in being at the time the limitation was created. And, in doing so, he selected the lives of his two children, and only undertook to limit the control of the property until the death of the survivor. He then requires the property to vest absolutely, and in any contingency the persons who shall then take will be able to dispose of it within the period of twenty-one years and nine months after it shall so vest.

The ninth clause of the will provides for the final and absolute disposition of the property in the event of the death of the legatees or a forfeiture of the property by them. If they have lawful issue or descendants of such issue on the happening of the contingency, the property is required to vest in them. Or, if they neither have children nor descendants of children when that event occurs, then he provides, that the property shall vest absolutely in his collateral relatives, who are designated in the will. So that, by the terms of this will, the property must become unfettered within twenty-one years and the fraction required by the law after the death of the legatees. When

the two lives are spent, the remainder must take effect and vest absolutely, either in their children or their decendants or in the collaterals. There is no effort to render the property inalienable after the death of the designated lives in being, nor can this will be construed to have that operation. Testator had the right to control this property for the period of time which the law has prescribed, and, until the attempt is made to violate the rule, courts will not interpose to prevent the exercise of the power. Nothing is perceived in this will which can operate to create a perpetuity such as the law has prohibited.

It is, however, insisted, that, although Mrs. Cummings may have been entitled to her brother's share of the property at his death, still she was not entitled to the accumulations while in the hands of the executors. The eighth clause of the will requires, in express terms, that the accumulations shall be paid over to his two children, at the same time, and in the same manner, as the principal fund. This was the intention of the testator, clearly manifested by the will. It, in all respects, and for all purposes, became and was a part of the fund, and was required to be held on the same terms and conditions as the original fund. And, had the testator made no such express provision, the law would have so regarded it.

Nor is there any force in the objection that Mrs. Cummings has not executed a bond to the administrators with the will annexed, for the faithful preservation of the property for those in remainder. Where trustees under a will receive property to hold for a limited period, and then to be paid to persons named in the will, they have no option or discretion in the matter. They only have to execute the will, without imposing terms or conditions not contained in the will. Had testator desired that the legatees should give such a bond, he would have required it by his will. The court would, no doubt, on a proper application by the remaindermen, and upon a proper showing, require such bond, but third persons, having no interest in the fund, have no right to intervene.

There can be no pretense, that the administrators with the will annexed have any right to retain this fund after the lega-

tees arrived at the age of twenty-one. The will, in clear and unmistakable language, declared, that it should then be paid over to the legatees. And, when that period arrived, the life estates vested in them, upon the terms and conditions specified in the will. And, when William died, his share vested in Mrs. Cummings, subject to the limitations imposed upon it. Nor could any act of the administrators, in paying it over to an administrator of the estate of Wm. W. Mark, in the slightest degree affect her right.

It appears from the will, and almost every clause in it, that the testator intended, that this property should not be disposed of by his children, or in any manner become liable for their debts. He had declared, that the fund should not be disposed of by them, nor reached by their creditors. This being so, and the will having been recorded, all persons had notice of its provisions, and hence no one could have given William W. Mark, credit with belief that the fund, either in his hands or those of others, could ever be rendered liable to the payment of debts which he incurred. If he contracted debts, this fund is not liable for their payment. To render it liable would, to that extent, violate the will of the testator, and render the limitation upon the fund inoperative, and this courts have no power to do. When the testator declared that the fund should be beyond the reach of the creditors of the legatees, he only exercised a right given to him by the law, in disposing of his property.

We are unable to perceive any error in this record, and the decree of the court below must therefore be affirmed.

*Decree affirmed.*